DECISION
{¶ 1} In this original action, relator, Richard J. Kelley, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's request to change his election and receive benefits paid based upon an impairment of his earning capacity based upon a finding that relator had failed to establish that there had been a change in circumstances since he filed his original action, and ordering the commission to find that relator did meet his burden of proof.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion in denying relator's motion to change his election because relator did not meet his burden of proving unforeseen changed circumstances subsequent to his initial election. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} In his objections, relator contends the magistrate incorrectly holds that for a writ to be issued, relator must have a request for temporary total disability ("TTD") compensation pending at the same time of the 1997 permanent partial disability ("PPD") application. According to relator, it was only upon the issuance of the award in August 1998, that he was able to elect a permanent partial award or an impairment of earning capacity. In relator's objections to the magistrate's decision, he essentially re-argues the same points addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, we do not find relator's position well-taken.
 {¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Bryant and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Richard J. Kelley, : Relator, : v. : No. 05AP-1161 Industrial Commission of Ohio : and Lieb Jackson, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 19, 2006 Larrimer Larrimer, and Thomas L. Reitz, for relator.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} Relator, Richard J. Kelley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request to change his election and receive benefits paid based upon an impairment of his earning capacity based upon a finding that relator had failed to establish that there had been a change in circumstances since he made his original action, and ordering the commission to find that relator did meet his burden of proof.
Findings of Fact:
 {¶ 6} 1. Relator has sustained two work-related injuries during the course of his employment. The first injury occurred on January 10, 1983, and involved relator's left knee. This claim was originally allowed for "left knee/leg sprain." In April 1998, this claim would additionally be allowed for "degenerative joint disease of the left knee." Relator's second injury occurred on March 30, 1992, and involves his right knee. This claim was originally allowed for "right knee/leg sprain." In 1999, this claim was additionally allowed for "aggravation of traumatic arthritis, right knee." Ultimately, in 1999, relator would have both knees replaced.
 {¶ 7} 2. With regards to relator's left knee, relator was seen by Mel Olix, M.D., who reviewed his arthrogram and determined that relator has an "equivocal tear of the medial meniscus, but I'm sure this probably [is] going to be superceded by degenerative changes." Relator had surgery on his left knee, received a period of temporary total disability ("TTD") compensation, and then returned to his former position of employment as a union pipe fitter until he sustained his injury to his right knee in March 1992.
 {¶ 8} 3. In October 1993, relator had a second arthroscopic surgery performed on his left knee. The pre and post-op diagnosis was: "Tear of medial meniscal rim and degenerative joint disease unresponsive to conservative management."
 {¶ 9} 4. Relator was seen by Adolph V. Lombardi, Jr., M.D., on April 10, 1997, for a bilateral knee assessment. Dr. Lombardi noted that relator was 66 years old and reported that he was having a worsening of pain in both knees, with the left knee causing him more pain than the right. After his evaluation, Dr. Lombardi recommended surgery consisting of "bilateral primary total knee arthroplasty."
 {¶ 10} 5. In December 1997, relator filed an application seeking an award of permanent partial disability ("PPD") compensation relative to his left knee claim.
 {¶ 11} 6. In March 1998, relator filed a C-86 requesting surgery on his left knee.
 {¶ 12} 7. The Ohio Bureau of Workers' Compensation ("BWC") denied both relator's request for PPD compensation and for surgery in April 1998, after mistakenly determining that relator had not received any compensation in his left knee claim for ten years and that any further awards were barred by R.C. 4123.52.
 {¶ 13} 8. A hearing was held on April 8, 1998, in front of a district hearing officer ("DHO") and resulted in an order vacating the prior BWC's order and finding that relator's claim should be additionally allowed for degenerative joint disease of the left knee. The BWC referred relator's request for surgery to the MCO for determination and the DHO noted that there was no request for TTD compensation at that time.
 {¶ 14} 9. On June 29, 1998, Dr. Lombardi noted the following results of radiographs taken of relator's knees: "Radiographs of the right knee demonstrate joint space narrowing, sclerosis, osteophyte and cyst formation. Radiographs of the left knee demonstrate joint space narrowing, sclerosis, osteophyte and cyst formation." In his report of the same date, Dr. Lombardi again noted that relator needs surgery consisting of bilateral primary total knee arthroplasty.
 {¶ 15} 10. On July 9, 1998, relator filed an application seeking an award of TTD compensation in the claim involving his left knee from June 29, 1998, through an estimated return-to-work date of October 7, 1998.
 {¶ 16} 11. Relator's application for an award of PPD compensation was heard before a DHO on August 17, 1998. Relator was granted an eight percent PPD award entitling him to an award of compensation for a period of 16 weeks. This order was based upon the reports of Dr. Lombardi.
 {¶ 17} 12. Relator's request for TTD compensation was ultimately heard before a staff hearing officer ("SHO") on November 13, 1998, and was denied for the following reasons:
Claimant does have significant left (and right) knee problems, but the evidence from Dr. Lombardi is not found sufficient to establish that claimant became temporarily and totally disallowed based on any treatment currently planned for the claimant's left knee DJD. Temporary total compensa-tion from 06/29/1998 to 10/07/1998 is denied.
 {¶ 18} 13. By DHO order dated February 12, 1999, relator's right knee claim was additionally allowed for the condition of aggravation of traumatic arthritis.
 {¶ 19} 14. On June 18, 1999, relator had right knee replacement surgery and, on September 14, 1999, relator had left knee replacement surgery.
 {¶ 20} 15. Following the surgery on his right knee, relator was paid TTD compensation until October 7, 1999. Following the surgery to his left knee, relator was paid TTD compensation from October 8, 1999 through December 13, 1999.
 {¶ 21} 16. In his report dated May 7, 2001, Dr. Lombardi noted that relator was doing well following his bilateral knee replacement surgery. Dr. Lombardi noted that relator was 70 years old, was retired from his former position of employment, but that he was working part-time at his daughter's restaurant.
 {¶ 22} 17. On March 24, 2002, relator filed a request asking for an increase in his PPD award.
 {¶ 23} 18. By DHO order dated July 31, 2002, relator was granted a 12 percent increase in his PPD award and, as such, his PPD award was increased to 20 percent.
 {¶ 24} 19. In November 2002, relator filed an application for wage loss compensation in the claim involving his right knee.
 {¶ 25} 20. By DHO order dated March 4, 2003, relator was granted wage loss compensation as follows:
District Hearing Officer finds injured worker cannot return to his former position of employment as a result of the restric-tions as set forth by Dr. Lombardi (02/21/2003, 09/23/2002, 01/21/2003). The injured worker is limited in his ability to stand, bend and sit preventing him from returning as a pipe fitter and plumber. He has returned to work as a greeter within his restrictions.
District Hearing Officer finds pursuant to OAC 4125-1-01(F) 3(b) the injured worker works 15 hours per week with his present employer. Therefore, injured worker currently receives $10.00 per hour and is to be paid at a rate of 66 2/3% of the difference between the weekly wage the injured worker would have earned in the former position of employ-ment if the injured worker had worked only the 15 hours actually worked in his new position.
This order is based on the report of Dr. Lombardi (02/21/2003).
 {¶ 26} 21. On February 3, 2005, relator filed a motion requesting that he be granted the right to change his election to an impairment of earning capacity pursuant to R.C. 4123.57(A). Relator argued that, since the time of his original election, his knee conditions had significantly worsened, additional conditions had been authorized and he had undergone total knee replacement surgery.
 {¶ 27} 22. Relator's motion was heard before a DHO on April 19, 2005, and was denied for the reason that the DHO found that relator had failed to produce sufficient evidence that he had a desire to earn.
 {¶ 28} 23. Relator appealed and the matter was heard before an SHO on June 9, 2005. The SHO vacated the prior DHO order; however, the SHO also denied relator's request to change his election to an impairment of earning capacity for the following reasons:
Claimant requests a change of election. The Staff Hearing Officer notes that Claimant's initial C-92 award under this claim was made on 08/17/1998 and his election to receive benefits under paragraph B was made concurrently on that date. File evidence also indicates that this claim has to date been recognized for the following conditions: "LEFT KNEE/LEG SPRAIN; LEFT KNEE DEGENERATIVE JOINT DISEASE." The degenerative joint disease was additionally recognized by District Hearing Officer order of 06/25/1998. This condition regressed to the point that Claimant even-tually needed knee replacement on 09/14/1999. Claimant testified at hearing today that he was informed by his physicians some time early in 1998 that he would need to undergo a left knee replacement in the near term. Further-more, Claimant's counsel indicated that claimant had a previous right knee replacement under a companion claim. Given these facts, the Staff Hearing Officer finds that there was not a change in circumstances such that they were not foreseeable to Claimant at the time of his original election which would serve as a basis to allow him a change of election at this time. At the time of his original election, Claimant's claim had already been additionally recognized for the degenerative joint disease and the claimant had already been apprised of the likelihood that he would need a joint replacement. In spite of this knowledge, Claimant nonetheless elected to receive his benefits under paragraph B.
Accordingly, since the Staff Hearing Officer finds that there has not been a change in circumstances and since the first prong of this analysis has not been met, it is therefore unnecessary to consider the second prong of the applicable test which focuses on Claimant's actual impairment of earn-ing capacity.
All evidence was reviewed and considered in reaching this decision.
 {¶ 29} 24. Relator's further appeal was refused by order of the commission mailed June 30, 2005.
 {¶ 30} 25. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 31} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 32} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 33} Former R.C. 4123.57 required a successful applicant for partial disability compensation to make an election of payment, either as PPD compensation under R.C. 4123.57(B), or as impairment of earning capacity ("IEC") under R.C. 4123.57(A). For "good cause shown," a claimant could change the election upon proof of: (1) unforeseen changed circumstances occurring subsequent to the initial election; and (2) actual impaired earning capacity. State ex rel. Combs v. Goodyear Tire RubberCo. (1992), 62 Ohio St.3d 378.
 {¶ 34} The Supreme Court of Ohio has provided three examples of unforeseen changed circumstances sufficient to justify a change of election: (1) significant worsening of claimant's condition, State ex rel. Simpson v. Indus. Comm. (1991),62 Ohio St.3d 162; (2) unexpected transformation of a nonwork-preventative injury into a work-prohibitive one, id; and (3) recognition of additional conditions after election. Combs.
 {¶ 35} In the present case, the commission determined that relator had not demonstrated good cause to change his election because he had not demonstrated unforeseen changed circumstances occurring subsequent to the initial election. Specifically, the commission pointed out that, as early as 1997, prior to his initial election, Dr. Lombardi had recommended that relator have bilateral primary total knee arthroplasty. Further, the commission noted that relator's knee claim had already been allowed for the additional condition of degenerative joint disease four months before the commission awarded him an eight percent PPD award. The commission noted that the only things which happened after relator made his initial election were that his right knee claim was additionally allowed for aggravation of traumatic arthritis, he actually went ahead and had both knees replaced, and he requested and received an increase in his PPD award. Because relator had been informed, as early as 1997, that he would need to have both knees replaced, the commission found that relator had not demonstrated unforeseen changedcircumstances.
 {¶ 36} In his mandamus action, relator contends that the commission has misapplied the facts and has failed to appreciate the timing of events. However, the magistrate finds that the commission has not abused its discretion.
 {¶ 37} As the commission noted, it was originally recommended that relator would need to have both knees replaced in April 1997. Pursuant to his testimony, claimant indicated that he knew as early as 1998 that he would need to have both knees replaced. As stated in the findings of fact, in his April 10, 1997 report, Dr. Lombardi indicated that both knees would need to be replaced. Second, although relator is correct to argue that, in December 1997 when he originally applied for a PPD award, his left knee claim had not been additionally allowed for degenerative joint disease, that additional condition was allowed prior to the time that the commission granted him the PPD award. As such, prior to the time that he actually made the election for how he was to receive the PPD award, relator's claim had been additionally allowed for the degenerative joint disease. While it is true that relator had additional periods of TTD compensation following the knee replacement surgeries, the magistrate finds that the simple award of compensation likewise does not demonstrate an unforeseen change in circumstances. The magistrate does not find relator's argument that the timing of his filing of motions for requested compensation clearly establishes he demonstrated good cause for a change of election.
 {¶ 38} Relator also argues that, at the time he applied for compensation under R.C. 4123.57, he was legally precluded from electing to receive this compensation as an impairment of earning capacity. Relator's rationale for this argument is that he had an application for TTD compensation pending before the commission. Since R.C. 4123.56 (TTD) implies an inability to perform any work and R.C. 4123.57 (IEC) implies that one is working but earning less, one legally cannot apply for both at the same time. For the reasons that follow, this magistrate rejects relator's argument.
 {¶ 39} Pursuant to former (and current) R.C. 4123.57, an employee may file an application for the determination of the percentage of permanent partial disability resulting from an injury "[n]ot earlier than forty weeks after the date of termination of the latest period of total disability following the injury." In the present case, relator's application was filed in December 1997. At that time, there was no application for TTD compensation pending. Relator's application for TTD compensation was filed in July 1998. At that time, relator's request for a PPD award had not yet been adjudicated.
 {¶ 40} The record is devoid of any evidence indicating whether or not relator was working at the time he filed the application for a PPD award. However, it can be inferred that, in August 1998 when the PPD award was granted, relator must not have been working (his TTD motion requested compensation from June 29, 1998). The award of PPD compensation under R.C. 4123.57(A) or (B) "shall accrue and be payable to the employee from the date of last payment of compensation." The record is unclear as to the exact last date of payment of TTD compensation to relator. Further, R.C. 4123.57(D) provides that any "[c]ompensation for partial disability under divisions (A), (B), and (C) [scheduled losses] of this section shall be in addition to the compensation paid the employee for the periods of temporary total disability resulting from the injury."
 {¶ 41} Because relator did not have an application for TTD compensation pending when he filed his application for a PPD award and relator has not presented evidence indicating whether he was or was not working and the payment of an award under either R.C. 4123.57(A) or (B) accrues and is payable from the date of the last payment of compensation and R.C. 4123.57
contemplates future payments for TTD compensation and lastly, because there is no evidence in the record that relator presented this argument to the commission as a reason to grant his request to change his election (see stipulated evidence at 60), the magistrate finds that relator has failed to meet his burden of proof in mandamus on this issue.
 {¶ 42} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in denying his motion to change his election to one of IEC because relator did not meet his burden of proving unforeseen changed circumstances subsequent to his initial election. As such, this court should deny relator's request for a writ of mandamus.